UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KELVIN MERRITT, | ) | |
|---|---|---|
| Plaintiff, | ) ) | Case No. 07 C 4717 |
| v. | ) ) | Judge Rebecca R. Pallmeyer |
| DR. PARTHA GHOSH, DR. ANDREW TILDEN, DR. MARY LOFTON, DR. LAWRENCE NGU, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kelvin Merritt, filed suit, *pro se*, alleging that Defendants, medical providers at various institutions, were deliberately indifferent to his serious medical needs. Defendants, Drs. Ghosh, Lofton and Ngu, have moved for summary judgment, arguing that Plaintiff's claims must be dismissed due to his failure to exhaust administrative remedies, are barred by the statute of limitations, or fail on their merits. For the reasons stated in this order, the motion for summary judgment is granted. Furthermore, the case is dismissed as to Defendant Dr. Tilden on timeliness grounds.

**Legal Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Lee v. Young,* 533 F.3d 505, 509 (7th Cir. 2008). Rule 56(c) requires that the court grant a motion for summary judgment if, after adequate time for discovery, "a party . . . fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Johnson v. Doughty*, 433 F.3d 1001, 1009-10 (7th Cir. 2006) (citing *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003).)

Defendants served Plaintiff with the appropriate "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). The Notice explained that under this court's rules, a plaintiff opposing summary judgment must file a statement containing "numbered paragraphs responding to each paragraph in the defendants' statement of facts." Local Rule 56.2 Notice to Pro Se Litigant [51]. If Plaintiff were to disagree with Defendants' factual submissions, the Notice explained, Plaintiff should "explain how and why you disagree" and "explain how the documents or declarations you are submitting support your version of the facts." *Id.* The Notice warned that "[i]f you do not provide the Court with evidence that shows that there is a dispute about the facts, the judge will be required to assume that the defendant's factual contentions are true and, if the defendant is also correct about the law, your case will be dismissed." *Id.* at 2. Finally, the Notice invited Plaintiff to "offer the Court a list of facts that you believe are in dispute and require a trial to decide," supporting that list with "documents or declarations" and an explanation of "how your documents or declarations support your position." *Id.*

Although *pro se* plaintiffs are entitled to some leniency, compliance with procedural rules is required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced."); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir.1994); *Fischer v. Ameritech*, No. 98 C 7470, 2002 WL 1949726, *4 (N.D. Ill. Aug. 23, 2002)(Pallmeyer, J.). Despite being given this notice, Plaintiff's response to Defendants' motion for summary judgment does not identify which of the numbered paragraphs are responses to the Defendants' proposed statement

2

of facts, which are argument, and which are Plaintiff's proposed statements of fact. The document also contains a copy of the complaint and 36 pages of medical records, but Plaintiff's response does not cite to any specific document. Because Plaintiff is proceeding *pro se*, the court will consider the factual assertions he makes in his brief, but only to the extent that Plaintiff could properly testify about the matters asserted at trial—that is, only with respect to those facts within Plaintiff's personal knowledge. See FED. R. EVID. 602. The court notes, further, that information in Plaintiff's medical records (many of which were submitted both by Defendants and by Plaintiff) will be deemed accurate in the absence of any contrary evidence.

**Undisputed Facts**

Plaintiff is an inmate in the Illinois Department of Corrections, currently held at the Hill Correctional Center. (Pl.'s Dep. at 1; Defs.' Ex. A.) At times relevant to his claims, Defendant, Dr. Partha Ghosh, was the Medical Director at Stateville Correctional Center ("Stateville"); Defendant, Dr. Mary Lofton, was the Medical Director at Lawrence Correctional Center ("Lawrence"); and Defendant, Dr. Lawrence Ngu, was the Medical Director at Dixon Correctional Center. (Pl.'s Comp.; Defs.' Ex. B.)

Plaintiff was transferred to Stateville in 2003. (Pl.'s Dep. at 4; Defs.' Ex. A.) While at Stateville, Plaintiff was treated by Dr. James Bizzel in the ophthalmology clinic for glaucoma and for chronic sinusitis on the following occasions: March 8, 2004; April 29, 2004; May 3, 2004; June 18, 2004; June 22, 2004; July 15, 2004; December 9, 2004; he also received medical treatment on June 21, 2005 and August 3, 2005. (Defs. Ex. D.) On November 3, 2004, Dr. Ghosh prescribed Ciproflaxacin and a nasal spray. (Nov. 3, 2004, Progress Note; Defs.' Ex. E.) On December 9, 2004, Plaintiff was again treated by Dr. Ghosh for nasal sinusitis. Plaintiff was prescribed a moisturizing cream, Levaquin, and Nasonex. (Dec. 9, 2004, Progress Note; Defs.' Ex. E.)

Plaintiff was also treated by Dr. Tilden while at Stateville. Dr. Tilden first treated Plaintiff in January or February of 2005, at which time he prescribed Afrin. (Pl.'s Dep. at 8; Defs. Ex. A.) After

3

being treated by Dr. Tilden, Plaintiff suffered, or continued to suffer, from a sinus infection for which he was treated by Dr. Bizzel and by Dr. Ghosh. At some point, Dr. Ghosh referred Plaintiff to a visiting ear, nose, and throat specialist. (*Id.* at 10-11.) The last time Plaintiff received treatment from Dr. Ghosh was in March or April of 2005. (*Id.* at 14.)

On August 8, 2005, Plaintiff received a CT scan. On August 20 or 22, 2005, Plaintiff was transferred to Lawrence. (Pl.'s Dep. at 15; Defs.' Ex. A.) On September 16, 2005, Plaintiff was treated by an optometrist at the Marion Eye Clinic for eye pain resulting from injuries, failed corneal transplants, and glaucoma. (Sept. 16, 2005, Transfer Summary; Defs.' Ex. E.) On September 29, 2005, Plaintiff advised a registered nurse at Lawrence that he did not want any further examination or treatment until he received the results from the CT scan, which had been ordered but had not yet arrived. (Sept. 29, 2005, Progress Note; Defs.' Ex. E.)

On October 5, 2005, Dr. Lofton treated Plaintiff for chronic sinusitis and nasal polyps. Dr. Lofton prescribed Beconase (a corticosteroid) to be used until January 31, 2006. (Oct. 5, 2005, Progress Note; Defs.' Ex. E.) Plaintiff received instructions on the medication's use and was scheduled for follow-up appointments on October 24, 2005 and again on November 14, 2005. (Oct. 24, 2005, Progress Note; Defs.' Ex. E). When she saw him on November 14, 2005, Dr. Lofton advised him to continue using the Beconase prescribed, in addition to a saline nasal spray. (Nov. 14, 2005, Progress Note; Defs. Ex. E.) Plaintiff was treated again on December 29, 2005, at which time he received prescriptions for Cipro and Sudafed and the doctor noted a request for referral to an ear, nose and throat specialist. (Dec. 29, 2005, Progress Note; Defs.' Ex. E.) Plaintiff confirmed that the Sudafed did provide relief. (Pl.'s Dep. at 22; Defs. Ex A.)

On January 17, 2006, Dr. Lofton saw Plaintiff and conferred with him regarding Plaintiff's refusal to go to an appointment with an eye doctor because he was angry with security. (Jan. 17, 2006, Progress Note; Defs Ex E.) When Plaintiff saw Dr. Lofton again one month later, Dr. Lofton's notes show she and Plaintiff had a long discussion in which the doctor explained that nasal polyps

4

are a result of allergies, not of cancer. (Feb. 21, 2006, Progress Note; Defs.' Ex. E.) Throughout his incarceration at Lawrence, Plaintiff refused to take certain "yellow pills" that the medical technicians offered him to treat his congestion. (Pl.'s Dep. at 25; Defs.' Ex. A.)

On July 31, 2006, Plaintiff was transferred to Dixon. (July 31, 2006, Transfer Summary; Defs.' Ex. E.) On September 20, 2006, Plaintiff was treated by Dr. Ngu. At that time, Plaintiff requested new shoes and complained about his nasal polyps and difficulty in breathing. Dr. Ngu concluded that Plaintiff was in no acute distress but prescribed Motrin. (Aug. 20, 2006, Progress Notes; Defs.' Ex. E.) Notes from Plaintiff's November 1, 2006 doctor visit refer to a possible consultation at the University of Chicago ("UIC") regarding Plaintiff's chronic left eye pain. At that time, Plaintiff also complained that his sinuses were "messed up" but he did not appear to be in acute distress. (Nov. 1, 2006, Progress Note; Defs.' Ex. E.) On December 18, 2006, Plaintiff was treated by Dr. Ngu; Plaintiff asked Dr. Ngu for a referral for surgery to correct the nasal polyps, and asked about his next ophthalmology appointment. Again, Plaintiff was assessed as having nasal polyps and allergic rhinitis, but did not appear to be in distress. Plaintiff was prescribed Chlor-Trimeton. (Dec. 18, 2006, Progress Note; Defs.' Ex. E.)

Plaintiff was seen by medical staff on January 3 and February 22, 2007. On these occasions, Plaintiff was not complaining of any health issues, but was inquiring about his referral to UIC. (Jan. 3 and Feb. 23, 2007, Progress Notes; Defs.' Ex. E.) Plaintiff was treated in the medical unit for issues relating to his corneal problems on May 1 and May 2, 2007 and on May 18, 2007, Plaintiff was sent to UIC for an ophthalmology consultation. (May 1, 2, and 18, 2007, Progress Notes; Defs.' Ex. E.)

On June 13, 2007, Plaintiff injured his back. Thereafter, treatment that Plaintiff requested while at Dixon related to his back pain, except for one visit during which Plaintiff requested a further evaluation of his eye problem. (June 13, 19, and 22, 2007, Progress Notes; Defs.' Ex. E.) While at Dixon, Plaintiff continued to refuse to take the yellow pill offered to treat his nasal congestion

5

because he believed this pill was not appropriate for someone who, like Plaintiff, suffers from glaucoma. (Pl.'s Dep. at 34; Defs.' Ex. A.) Plaintiff was transferred to Hill Correctional Center on June 29, 2007. (June 29, 2007, Transfer Summary; Defs.' Ex. E.)

Plaintiff alleges that he filed certain grievances and attached copies concerning his medical care. (Pl.'s Comp.; Defs. Ex. B.) Defendants assert that Administrative Review Board records show that Plaintiff did not file appeals in compliance with the departmental rules that relate to medical care during the time period at issue in the complaint. (Sherry Benton Affidavit; Defs.' Ex. C.)

## **ANALYSIS**

**I.    Exhaustion of Administrative Remedies**

Defendants first argue that Plaintiff's claims are barred because he failed to exhaust his administrative remedies.

The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under [42 U.S.C. § 1983]." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

An inmate must take all the steps required by the prison or jail's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). Exhaustion is a precondition to filing suit, so that an inmate's attempt to exhaust available administrative remedies in the midst of litigation is insufficient. *Ford,* 362 F.3d at 398; *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999). The purpose of the exhaustion requirement is to give corrections

6

officials the opportunity to address complaints internally before the filing of a federal lawsuit. *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). Failure to exhaust administrative remedies is an affirmative defense; correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

The grievance procedure, as set forth in the Illinois Administrative Code, provides that an inmate shall first attempt to resolve the issue with his or her counselor. If the issue cannot be resolved with the counselor, or if the grievance pertains to a disciplinary proceeding, the inmate may file a written grievance within sixty days of the incident. 20 Ill. Admin. Code 504.810(a). The Chief Administrative Officer shall advise the inmate of the findings and recommendations within two months of the receipt of the written grievance. 20 Ill. Admin. Code 504.830(d).

When a grievance is not resolved to his satisfaction, an inmate may appeal in writing to the Director within thirty days after receiving the Chief Administrative Officer's findings and recommendation. 20 Ill. Admin. Code 504.850(a). The Director reviews the appeal to determine whether a hearing before the Administrative Review Board is required. If the Director determines that the grievance is meritless or can be resolved without a hearing, the inmate is so advised in writing. 20 Ill. Admin. Code 504.850(b). If the grievance requires a hearing, the Administrative Review Board conducts a hearing and submits a written report to the Director. 20 Ill. Admin. Code 504.850(e). The Director then makes a final decision within six months of receipt of the appealed grievance, where reasonably feasible. 20 Ill. Admin. Code 504.850(f).

Plaintiff has provided copies of two grievances he filed regarding his medical care, but he offers no evidence that he filed an appeal to the Administrative Review Board, nor any basis to rebut Defendants' contention that there is no such appeal on file with the Board. Plaintiff cannot rely solely on his allegations in his complaint to defeat summary judgment. *See Sparing v. Village of Olympia Fields*, 266 F.3d 684, 692 (7th Cir. 2001). Accordingly, the summary judgment evidence

demonstrates that Plaintiff failed to exhaust his administrative remedies. Defendants are entitled to summary judgment on this basis alone, but for the reasons explained below, dismissal of Plaintiff's claims is warranted for other procedural and substantive reasons as well.

**II.     Timeliness of Suit as to Dr. Ghosh**

Dr. Ghosh contends that any claims against him are time-barred.

Section 1983 claims are governed by the forum state's personal injury statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 279 (1985); *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). In Illinois, the limitations period for a Section 1983 claim is two years. *See Johnson*, 272 F.3d at 521. A Section 1983 action accrues when the plaintiff knew or had reason to know of the injury that is the basis of his claim. *Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996). Under the "mailbox rule," prisoner pleadings are considered filed when given to the proper prison authorities for mailing, not when received by the district court clerk. See*, e.g., Jones v. Bertrand*, 171 F.3d 499, 501 (7th Cir. 1999) (relying on *Houston v. Lack*, 487 U.S. 266 (1988)) (both Section 2254 habeas cases); *see also Edwards v. United* States, 266 F.3d 756, 758 (7th Cir. 2001) (mailbox rule applies to prisoner motions pursuant to FED. R. CIV. P. 59(e)); *Dickerson v. Phillips*, No. 05 C 2181, 2008 WL 879446, at *4 (C.D. Ill. March 28, 2008)(McCuskey, J.); *McPherson v. Bunch*, No. 03 C 1008, 2004 WL 1151566, at *2 (N.D. Ill. May 3, 2004)(Nolan, J.) (both applying mailbox ruling in determining whether complaint was timely filed).

Plaintiff's complaint is dated August 7, 2007. The envelope containing Plaintiff's complaint is postmarked August 17, 2007. The last time Plaintiff received treatment from Dr. Ghosh was in March or April of 2005. Thus, even assuming Plaintiff's complaint was "filed" on August 7, 2007, any claims based on the medical treatment provided by Dr. Ghosh are time-barred because the complaint would have to be filed on or before April 30, 2007.

### III. Lack of Deliberate Indifference

Finally, the court concludes there is no basis for a finding that any of the Defendants acted with deliberate indifference to Plaintiff's medical needs. "[D]eliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal quotations and citations omitted). A claim of deliberate indifference includes both an objective and subjective element. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). As to medical care, "the objective element requires that the inmate's medical need be sufficiently serious." *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is sufficiently serious if has been diagnosed by a physician as mandating treatment or it so obvious that even a lay person would recognize the necessity of medical treatment. *See Foelker v. Outgamie County*, 394 F.3d 510, 512 (7th Cir. 2005).

The subjective element requires that the prison official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). The negligent or inadvertent failure to provide adequate medical care is not sufficient because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06. A prisoner need not prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). The prisoner need only show that the defendant prison official actually knew of a substantial risk of harm to the prisoner and acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the fact of that risk is obvious. *Id.* Mere medical negligence is insufficient to demonstrate deliberate indifference, however. *See Foelker*, 394 F.3d at 513. As applied to claims of deliberate indifference based on a physician's treatment decision, "the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually

9

based on a medical judgment." *Norfleet*, 439 F.3d at 396. And a difference of opinion among physicians as to the proper treatment is insufficient to support a finding of deliberate indifference. *See Norfleet*, 439 F.3d at 396.

The court will assume for purposes of this discussion that Plaintiff's medical conditions were serious ones. There is however, no indication in this record that any of the doctors were deliberately indifferent to his needs. During the period from 2003 through August 2005, when Plaintiff was housed at Stateville, he received treatment for his glaucoma and sinusitis from Dr. Bizzel, Dr. Ghosh, and Dr. Tilden on multiple occasions. Plaintiff received medications on several occasions and a CT scan in August 2005. Plaintiff generally disagrees with some of the medical treatment he received, but he presents no basis for a conclusion that the treatment accorded him was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396. Plaintiff has failed to demonstrate that any of the doctors at Stateville knew of a substantial risk of harm to him and that they acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at 1037.

Plaintiff was subsequently transferred to Lawrence, where he received medical treatment at the Marion Eye Clinic and from Dr. Lofton. Dr. Lofton treated Plaintiff on multiple occasions and prescribed medications to treat Plaintiff's medical conditions. Plaintiff argues that Dr. Lofton was deliberately indifferent to his serious medical needs because she prescribed the "same sprays" with knowledge that they did not provide Plaintiff relief because of his polyps. Plaintiff provides no evidence to support his conclusory argument and he fails to demonstrate in any manner that treating Plaintiff with the "same sprays" constituted deliberate indifference. Where, as here, a physician provides constitutionally acceptable care, his or her inability to effect a final cure is not proof of deliberate indifference. *Glass v. Rodriguez*, 417 F. Supp. 2d 943, 948 (N.D. Ill. 2006)*; see Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (prison officials do not violate the Constitution when they fail to alleviate a risk that they should have perceived but did not).

Similarly, Plaintiff argues that Dr. Gnu was deliberately indifferent to his serious medical needs because he also prescribed the "same nasal sprays" knowing that they did not help Plaintiff and because Plaintiff was "offered a yellow pill in which it is a known fact any glaucoma patient should not take due to high pressure on the eye." Plaintiff offers no evidentiary support for this assertion, however, nor any basis for the conclusion that Dr. Gnu's involvement, if any, in offering him the "yellow pill" demonstrates deliberate indifference

In summary, Plaintiff has failed to demonstrate that any of the medical treatment he received from the served Defendants was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396. Accordingly, Defendants' motion for summary judgment is granted.

## IV.    Lack of Service on Dr. Tilden

Finally, the court notes that Dr. Tilden has not yet been served as required by Rule 4 of the Federal Rules of Civil Procedure. On January 13, 2009, the court ordered Plaintiff to show good cause why Dr. Tilden should not be dismissed; the court noted in its order that any claims against Dr. Tilden appeared to be barred by the statute of limitations. Plaintiff has neither shown good cause nor otherwise responded to the order. Defendant Dr. Tilden is accordingly dismissed from this action without prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendant Dr. Tilden is dismissed from this action without prejudice. Defendants' motion to strike [54] is denied. Defendants' motion for summary judgment [48] is granted. The Clerk is directed to enter judgment in favor of the Defendants Drs. Ghosh, Lofton and Ngu pursuant to FED. R. CIV. P. 56. The case is terminated.

ENTER:

Dated: July 29, 2009

_____
REBECCA R. PALLMEYER
United States District Judge